```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

ROBIN BUSBY                         :     CIVIL ACTION
                                    :
          v.                        :
                                    :
STEADFAST INSURANCE CO., et al.     :     NO. 19-2225

MEMORANDUM

Bartle, J.                                October 31, 2019

     Plaintiff Robin Busby ("Busby") brings this diversity action against defendants Steadfast Insurance Co. ("Steadfast") and USAA Casualty Insurance Co. ("USAA") for breach of contract and for bad faith under Pennsylvania law for failure to pay certain claims of Busby arising out of serious injuries she suffered as a passenger in a motor vehicle on the Schuylkill Expressway in Philadelphia.

     Before the court are the cross-motions of the parties for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I

     Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a

reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  We view the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

The parties have stipulated to the relevant facts.  On October 29, 2016, Busby was a passenger in the backseat of a 2013 Nissan Altima driven by Thomas Curtain, who Busby had hired as a driver through Lyft, Inc. ("Lyft").  Curtain was traveling eastbound on the Schuylkill Expressway in the left-hand lane near mile marker 334.3.  The traffic came to a stop in front of

Curtain's vehicle. Curtain drove his vehicle into the rear of the car in front of him which was stopped in traffic.

After Curtain hit the car in front of him, a 2005 Dodge Grand Caravan driven by Gerald Crossley collided with the rear of Curtain's vehicle. Curtain's vehicle was equipped with an event data recorder which recorded "two separate events." The data was retrieved and analyzed by plaintiff's and defendants' respective experts. The data established that approximately one second had passed between the two crashes. The data also demonstrated that Curtain had been travelling in the left lane for at least six seconds before Crossley hit the rear of Curtain's car. Curtain's car was not moving and had come to a complete stop at the time it was rear-ended by Crossley.

As a result of the first impact, Busby had a delta force of 18 applied to her, that is, the vehicle's speed was abruptly reduced by 18 miles per hour due to the impact.[1] As a result of the second impact, the delta force applied to her was 13, that is, the speed of Curtain's vehicle was accelerated forward by 13 miles per hour due to the impact. To date, Busby's treating physicians have attributed her injuries to "the incident" or "the accident" and have not opined as to which injuries were caused by the first as opposed to the second impact.

---

1. Delta force is the change in velocity of a subject object during the collision event.

At the time in question, the Steadfast policy provided liability coverage for Lyft drivers like Curtain as well as uninsured or underinsured motorist benefits for passengers such as Busby using Lyft. The limits of coverage were an aggregate one million dollars for both liability and uninsured or underinsured motorist ("UIM") claims for "each accident." The Steadfast policy defines "accident" as follows: "Accident includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" The policy further states that "[r]egardless of the number of covered 'autos,' 'insureds,' premiums paid, claims made or vehicles involved in the 'accident', [sic] the most we will pay for the total of all damages . . . combined resulting from any one 'accident' is the Limit of Insurance for Covered Autos Liability Coverage shown in the Declarations."

The "Pennsylvania Underinsured Motorists Coverage" endorsement to the Steadfast policy similarly provides that "[r]egardless of the number of covered 'motor vehicles,' 'insureds,' premiums paid, claims made or vehicles involved in the 'accident,' the most we will pay for all damages resulting from any one 'accident' is the Limit of Insurance for Underinsured Motorists Coverage shown in the Schedule or Declarations."

In addition to the benefits under the Steadfast policy, Busby had UIM coverage under her personal automobile policy with

USAA.  The USAA policy provides UIM coverage of $100,000 per person and $300,000 per "accident" with stacking on Busby's two covered vehicles for a total of $200,000 in UIM coverage per person and $600,000 per accident.  The USAA policy does not define "accident."  In the "LIMIT OF LIABILITY" section related to UIM benefits, the USAA policy states that for bodily injury sustained by the insured or a family member:

> (1) Our maximum limit of liability for all resulting damages including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons is the limit of liability shown on the Declarations for "each person" for UIM Coverage multiplied by the number of premiums shown on the Declarations for UIM Coverage.
>
> (2) Subject to this limit for "each person," our maximum limit of liability for all damages for [bodily injury] to you and any family members in any one accident is the limit of liability shown on the Declarations for "each accident" for UIM Coverage multiplied by the number of premiums shown on the Declarations for UIM Coverage.

The "LIMITS OF LIABILITY" section further reads that "these limits are the most we will pay regardless of the number of:  (1) Covered persons; (2) Claims made; (3) Vehicles or premiums shown on the Declarations; or (4) Vehicles involved in the accident."  The section also states that "[n]o one will be entitled to receive duplicate payments for the same elements of loss."

-5-

Busby filed a personal injury action in the Court of Common Pleas of Philadelphia County against Curtain and Crossley. Busby settled her claims with them and the lawsuit was thereafter dismissed. While the terms of the settlements are confidential, it is undisputed that Steadfast paid to Busby the policy limit for an "accident," that is, one million dollars. Crossley's insurer tendered to Busby the limits of Crossley's liability coverage, which was $300,000 in liability coverage. USAA thereafter paid Busby the $200,000 stacked per person UIM limit available under her personal insurance policy.

Busby now seeks in this action an additional one million dollars in UIM coverage from Steadfast and an additional $200,000 in UIM coverage from USAA for what she terms as the "second accident involving the Crossley vehicle."[2] Defendants counter that the events of October 29, 2016 constitute one accident and thus there is no coverage remaining.

The narrow question before the court is whether under the undisputed facts, plaintiff was involved in one or two motor vehicle accidents for purposes of insurance coverage.

---

2. In the amended complaint filed in this court, Busby has claimed physical injuries and mental pain and suffering, including but not limited to a traumatic posterior scalp hematoma, concussions, traumatic brain injuries, right anterior pelvic hematoma, right gluteus muscle strain, neck and back injuries, cognitive delays, and loss of memory.

III

The interpretation of an insurance policy is a question of law that is properly decided by the court.³ Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). The primary goal in interpreting an insurance policy, as with any contract, is to ascertain the parties' intentions as manifested by the policy's terms. 401 Fourth Street, Inc. v. Investors Ins. Grp., 879 A.2d 166, 171 (Pa. 2005). "When the language of the policy is clear and unambiguous, a court is required to give effect to that language." Id. Alternatively, when a term in the policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." Id.

As noted above, the Steadfast policy provides an aggregate limit of one million dollars in liability and UIM coverage for each "accident." It defines accident as "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" The USAA policy does not define

---

3. The Steadfast policy was issued to Lyft, which is located in California. The policy does not contain a choice-of-law provision but includes a "Pennsylvania Underinsured Motorists Coverage" endorsement. The USAA policy was issued to Busby, a resident of Pennsylvania, and states that it is a "Pennsylvania Auto Policy." The parties have both relied on Pennsylvania law which the court will apply here.

"accident." However, under Pennsylvania law, "the term 'accident' within insurance policies refers to an unexpected and undesirable event occurring unintentionally." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 292 (Pa. 2007). In interpreting insurance contracts, the Pennsylvania Supreme Court has construed "accident" and "occurrence" synonymously. See id. at 293.

There are two key competing approaches used by courts to determine the number of accidents for purposes of insurance coverage: the "cause" approach and the "effects" approach. Pennsylvania, like the majority of jurisdictions, has adopted the "cause" approach. See id. at 293-94. Under this approach, "[t]he general rule is that an occurrence is determined by the cause or causes of the resulting injury. . . . Using this analysis, the court asks if '(t)here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage.'"[4] Flemming v. Air Sunshine, Inc., 311 F.3d 282, 294-95 (3d Cir. 2002) (quoting Appalachian Ins. Co. v. Liberty Mutual Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982)). "If cause and result are so simultaneous or so closely linked in time and space as to be

---

4. Conversely, jurisdictions employing the "effects" approach determine the number of accidents or occurrences based on the effect of the accident, that is, how many individual claims or injuries resulted from the accident. See Donegal Mut. Ins. Co., 938 A.2d at 293.

-8-

considered by the average person as one event, courts adopting the 'cause' analysis uniformly find a single occurrence or accident." Id. at 296 (quoting Welter v. Singer, 376 N.W.2d 84, 87-88 (Wisc. 1985)).

In Flemming, the surviving spouse of a man who died as a result of a plane crash brought suit against the airline and pilot seeking recovery under the airline's insurance policy. 311 F.3d at 284. The decedent had survived the initial crash but drowned when the plane sank into the ocean. Id. The policy at issue limited coverage to $500,000 for each person per "occurrence." Id. at 287. The plaintiff alleged four separate "occurrences" under the airline's insurance policy: (1) the plane crash itself; (2) the failure to provide a pre-flight safety briefing; (3) the failure to notify passengers of the impending crash and the failure to provide emergency safety instructions; and (4) after the crash, the failure to provide any aid to the decedent who was trapped in by his seat as the pilot and other passengers escaped. Id. at 286.

Applying the "cause" approach, our Court of Appeals concluded that the plaintiff's allegations of separate acts of negligence both before and after the crash did not constitute separate occurrences under the policy because they simply could not be seen as accidents independent from the crash itself. Id. at 295. Instead, the plane crash constituted one "constant, uninterrupted cause" that subjected the decedent to "'continuous or

repeated exposure to substantially the same general conditions' and led to his death." Id. The danger that resulted from the plane crash "was not interrupted or suspended by any intervening event." Id. The Court of Appeals also noted that the short time frame between the crash and any negligent acts "while not dispositive, [was] relevent when considered in the context of the confusion and disorientation caused by the accident." Id.

Earlier, in Appalachian Insurance Co. v. Liberty Mutual Insurance Co., a case cited by the Court of Appeals in Flemming, the defendant had adopted certain employment policies applicable to female employees in its claims department. 676 F.2d at 58. Several female employees of defendants filed a class action lawsuit alleging that the defendant committed sex discrimination in the hiring, promoting, and compensating of females due to these policies and thereafter settled their claims with defendant. Id. at 58-59. The plaintiff insurer filed a declaratory judgment action against the defendant seeking a determination that the occurrence of any loss due to the lawsuit occurred prior to the effective date of the relevant insurance policy. Id. at 59. Under the cause theory, our Court of Appeals determined that a single occurrence took place under the insurance policy when the defendant adopted the employment policies. Id. at 61-63.

In Donegal Mutual Insurance Co., the victims of six separate shooting incidents or their estates brought suit against

the parents of the shooter alleging that the parents were negligent in failing to procure mental health treatment for their son, failing to take away his handgun, and failing to notify authorities that their son possessed a handgun. 938 A.2d at 288-89. The Pennsylvania Supreme Court considered whether these shootings constituted a single occurrence under the parents' insurance policy. Id. at 288-89, 293. Applying the "cause" theory, the court determined that "the underlying negligence" that began the sequence of events that caused the shootings was the parents' failure to remove their son's weapon and/or alert authorities and that therefore the shootings constituted one occurrence. Id. at 293-96.

We apply the "cause" approach. Unlike the circumstances in Flemming, Appalachian Insurance Co., and Donegal, there were two independent actors here who caused two separate collisions. The Lyft vehicle driven by Curtain had crashed into the vehicle ahead of it and had come to a complete stop with Curtain in full control before the Crossley vehicle hit the Lyft vehicle. While the time between the two crashes was only a second, it was enough time for Busby to be thrown forward as a result of the Lyft crash and then again as a result of the Crossley crash. Even if Curtain had stopped the Lyft vehicle prior to striking the back of the vehicle in front of him, Crossley still would have rear-ended Curtain's vehicle. The crash caused by Curtain was not the proximate cause

of the crash caused by Crossley.  Nor were the two crashes one continuing and uninterrupted cause.  In the words of our Court of Appeals, there simply was not "one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damages."  See Flemming, 311 F.3d at 294-95.

The language of the policies, which must be construed against the insurers, does not rescue the defendants.  First, the USAA policy does not define accident.  The court is left with the well-established definition adopted by the Pennsylvania courts which, as stated above, is "an unexpected and undesirable event occurring unintentionally."  Donegal Mut. Ins. Co., 938 A.2d at 292.  The Steadfast definition, which defines accident as "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage,'" is unavailing.  Busby was not subject to continuous and repeated exposure to the same condition.  The definition in the Steadfast policy does not fit the facts of this case.  This is not, for example, an action alleging the continuous or repeated exposure to contaminated drinking water or to dangerous chemicals.

In support of their positions, defendants both point to language in the policies that limits damages for any one accident regardless of the number of vehicles involved in the accident. Those provisions merely make clear that an "accident" may involve multiple vehicles.  They do not illuminate the real issue before

this court, that is, whether the stipulated facts presented here constitute one or two accidents under the policies.

The issue before the court is fact intensive. While there are a myriad of cases in a variety of jurisdictions involving whether one or more accidents took place for purposes of insurance coverage, no case has been cited to us applying Pennsylvania or other state law portraying the same or similar fact pattern as exists here.[5] Many cases are distinguishable because they involved only one actor while here we have two independent actors. See, e.g., Banner v. Raisin Valley, Inc., 31 F. Supp. 2d 591, 591-92 (N.D. Ohio 1998); Just v. Farmers Auto. Ins. Ass'n, 877 N.W.2d 467, 469 (Iowa 2016). In many, one initial event can be considered to be the proximate, uninterrupted, and continuing cause of the subsequent events. Id.; see also Welter, 376 N.W.2d at 87-88. As noted above, the first act by Curtain was not the proximate, uninterrupted, and continuing cause of the subsequent act of Crossley. What happened here is not like a chain reaction motor vehicle crash where the last car hits the car in front of it

---

5. The case cited by the parties most analogous to the facts presented here is Greengo v. Public Employees Mutual Insurance Co., 959 P.2d 657 (Wash. 1998). There, the plaintiff was a passenger in a car that rear-ended a car on the highway and was then rear-ended by a third car. 959 P.2d at 658. However, the Supreme Court of Washington remanded the action to the trial court for further proceedings to resolve disputed issues of material fact and thus did not reach the ultimate issue of whether the two collisions constituted two accidents. Id. at 655.

which then hits the car in front of it as a result of the first impact.  Busby concedes that had such a "domino" type of collision occurred there would be one accident under the relevant policies.

Regardless of what other jurisdiction have done, we must predict how the Pennsylvania Supreme Court would rule.  See, e.g., Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).  We conclude, based on the above analysis, that that Court would reach the result that two accidents took place.

Accordingly, the motion of Busby for partial summary judgment that she was involved in two accidents on October 29, 2016 will be granted.  The motions of defendants Steadfast and USAA for partial summary judgment that only one accident took place will be denied.